**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

STEPHANIE RODRIGUEZ, individually
and as Guardian Ad Litem of J.C.,
a minor; SAMUEL OYOLA-PEREZ;
JULIUS RIGGINS; NILDA MEYER,
individually and as Personal
Representative of the Estate of
Wilfredo Dayandante,
                    *Plaintiffs-Appellees,*

          v.

LOCKHEED MARTIN CORPORATION;
ALEXIS INTERNATIONAL, INC.;
COMMONWEALTH ALUMINUM SALES
CORPORATION; JOHN DOE
CORPORATION,

                    *Defendants,*

          and

GENERAL DYNAMICS ARMAMENT AND
TECHNICAL PRODUCTS, INC.,
                    *Defendant-Appellant.*

No. 10-15813

D.C. No.
1:08-cv-00189-
SOM-KSC

OPINION

Appeal from the United States District Court
for the District of Hawaii
Susan Oki Mollway, Chief District Judge, Presiding

Argued and Submitted
August 9, 2010—San Francisco, California

Filed November 30, 2010

Before: Susan P. Graber, Consuelo M. Callahan, and
Carlos T. Bea, Circuit Judges.

18933

Opinion by Judge Callahan

**COUNSEL**

Peter K. Batalden (argued) and Lisa Perrochet of Horvitz & Levy LLP, Encino California; J. Stan Sexton and Gregory L. Fowler of Shook Hardy & Bacon, LLP, Kansas City, Missouri; James J. Yukevich of Yukevich Calfo & Cavanaugh, Los Angeles, California; and Edmund Burke and John Reyes Burke of Burke McPheeters Bordner & Estes, Honolulu, Hawaii, for defendant-appellant General Dynamics Armament and Technical Products, Inc.

Ward K. Brown (argued) and David E. Larson of Withers, Brant, Igoe & Mullennix, P.C., Liberty, Missouri; and Dennis E.W. O'Connor, Jr. of O'Connor Playdon & Guben LLP, Honolulu, Hawaii, for plaintiff-appellees Stephanie Rodriguez, Julius Riggins, Samuel Oyola-Perez, Nilda Meyer, individually and as personal representative of the estate of Wilfredo Dayandante.

Jonathan M. Hoffman and Joan L. Volpert of Martin Bischoff Templeton Langslet & Hoffman, LLP, Portland, Oregon, for amicus curiae The Product Liability Counsel.

**OPINION**

CALLAHAN, Circuit Judge:

Defendant-appellant General Dynamics Armament and Technical Products, Inc. ("General Dynamics"), seeks to appeal from the district court's denial of its summary judgment motion in an action arising from the premature explosion of a mortar cartridge manufactured by General Dynamics during an army training exercise in Hawaii.[1] The explosion killed Oscar Rodriguez and injured Samuel Oyola-Perez, Julius Riggins, and Wilfredo Dayandante (collectively, "Plaintiffs"), the other soldiers in the training detail, who brought suit against General Dynamics alleging, *inter alia*, products liability and negligence claims under Hawaii law. General Dynamics moved for summary judgment on the merits of the Plaintiffs' claims and also on the ground that the government contractor defense, first articulated in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988), barred Plaintiffs' claims. The district court denied both motions, holding that a genuine issue of material fact as to what caused the explosion precluded summary judgment. General Dynamics filed a timely notice of appeal challenging the portion of the district court's order denying summary judgment on the basis of the government contractor defense. General Dynamics contends that the government contractor defense confers an immunity from suit and that the denial of summary judgment may be reviewed immediately under the collateral order doctrine. We disagree and hold that the government contractor defense is not a grant of immunity. Accordingly, the denial of summary judgment is not immediately appealable, and we dismiss the appeal.

---

[1]The parties stipulated that General Dynamics manufactured the mortar cartridge, although it was actually manufactured by General Dynamics's predecessor-in-interest, Martin Marietta Aluminum Sales, Inc. ("Martin Marietta").

## I.

## A.

During a live-fire U.S. Army training exercise in Hawaii on March 10, 2006, an 81mm M374A3 HE (High Explosive) mortar cartridge exploded prematurely in the barrel of a mortar. Shrapnel from the explosion killed Staff Sergeant Rodriguez and caused serious injuries to Oyola-Perez, Riggins, and Dayandante.

Following the explosion, the Army conducted an investigation, which identified several possible causes of the explosion including material defects in the cartridge and a "double loading" scenario in which a cartridge was already in the tube when another cartridge was loaded. The Army's report concluded that "the evidence and test data cannot identify the exact cause of the malfunction incident."

## B.

The Plaintiffs brought suit against General Dynamics as the successor to Martin Marietta alleging, *inter alia*, strict products liability and negligence claims under Hawaii state law. The complaint alleged that the explosion was caused by a manufacturing defect in the mortar cartridge and that the cartridge did not comply with the design and specifications issued by the government. General Dynamics's theory of the case was that human error, specifically double-loading of the mortar cartridges, caused the explosion.

General Dynamics moved to exclude the Plaintiffs' expert's opinions and also filed two motions for summary judgment. The first motion sought summary judgment on the merits of Plaintiffs' strict liability negligence claims. The second motion rested on, *inter alia*, the government contractor defense.

In its order addressing all of General Dynamics's motions, the district court first denied General Dynamics's motion to exclude the Plaintiffs' expert's opinions. The Plaintiffs' expert stated opinions about the cause of the mortar explosion and the court found that he was qualified to do so and that his opinions would be helpful to the trier of fact within the meaning of Rule 702 of the Federal Rules of Evidence. In particular, the court found that the expert's opinion that the premature explosion was caused by a defect in the cartridge body, voiding or cracking in the high explosive filling, or a foreign body in the high explosive filling, was reliable and based on techniques generally accepted in the relevant expert community.

In support of its summary judgment motions, General Dynamics introduced the Army's specification documents for the cartridges, as well as affidavits attesting to Martin Marietta's compliance with the Army's requirements, to demonstrate that it had complied with the government's specifications.

After reviewing the inconclusive results of the Army's investigation, the district court noted that the Plaintiffs' expert opined, to a reasonable degree of scientific certainty, that "the explosion was caused by a defect in the cartridge body . . . , excessive voiding or cracking of the high explosive filling, or a foreign body in the high explosive filling." On the other hand, one of General Dynamics's experts opined, also to a reasonable degree of scientific certainty, that the explosion was caused by human error in double-loading cartridges in the mortar. General Dynamics' other expert testified that, absent human error, if a mortar cartridge were manufactured according to the government's specifications it would not explode inside the mortar. The court also noted that Oyola-Perez, who was injured during the explosion, asserted that double loading was not the cause of the explosion; and that, as part of its investigation, the Army conducted double-load tests and none of the mortars exploded in the barrel.

Addressing the negligence and strict liability claims on the merits, and viewing the evidence in the light most favorable to Plaintiffs, the district court held that there were disputed issues of fact sufficient to defeat General Dynamics' motions for summary judgment. The district court ruled that there were triable issues of fact as to whether the cause of the explosion was double-loading, or a defect in the cartridge at the manufacturing stage, or some other cause (e.g., defects in the fabricated parts that third-party companies manufactured and that Martin Marietta then assembled as part of the manufacturing process). The court further noted that there was a question of fact as to whether Martin Marietta manufactured the cartridge according to the government's specifications.

General Dynamics filed a timely notice of appeal, challenging only the portion of the district court's order denying the government contractor defense. It also filed a "Motion to Confirm a Stay of all Proceedings," which the district court denied, commenting that General Dynamics was "clearly attempting to appeal a nonappealable order."

## II.

## A.

We first determine whether we have jurisdiction over this interlocutory appeal. Under 28 U.S.C. § 1291, our jurisdiction is limited to appeals from final judgments. A denial of a summary judgment motion is generally not reviewable because it is not a final judgment. *See, e.g.*, *Brodheim v. Cry*, 584 F.3d 1262, 1274 (9th Cir. 2009) (citing *Jones-Hamilton Co. v. Beazer Materials & Servs., Inc.*, 973 F.2d 688, 693-94 (9th Cir. 1992)). In particular, a denial of summary judgment on the basis of an issue of material fact is ordinarily not a final judgment and not a basis for an interlocutory appeal. *See Johnson v. Jones*, 515 U.S. 304, 315-18 (1995).

**[1]** However, a denial of summary judgment may be appealable under the collateral order doctrine. "[A] decision

of a district court is appealable if it falls within 'that small class which finally determine[s] claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.' " *Mitchell v. Forsyth*, 472 U.S. 511, 524-25 (1985) (quoting *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949)). Under the collateral order doctrine, a party may appeal from an order that: (1) "conclusively determine[s] the disputed question"; (2) "re-solve[s] an important issue completely separate from the mer-its of the action"; and (3) would effectively be "unreviewable on appeal from a final judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978).

**[2]** A denial of a claim of immunity may be an immedi-ately appealable order within *Cohen*'s "narrow exception." *Del Campo v. Kennedy*, 517 F.3d 1070, 1074 (9th Cir. 2008). We have accepted interlocutory appeals under the collateral order doctrine where the issue is a sovereign's absolute immunity from suit and where qualified immunity is at issue. *See, e.g.*, *Paine v. City of Lompoc*, 265 F.3d 975, 980-81 (9th Cir. 2001) ("As a general matter, appeals from denials on summary judgment of claims of absolute immunity come within the collateral issue doctrine . . . ."); *Schwenk v. Hart-ford*, 204 F.3d 1187, 1195 (9th Cir. 2000) ("Although the denial of a summary judgment motion is not ordinarily an appealable order, this court has jurisdiction to consider an interlocutory appeal where the ground for the motion in ques-tion is qualified immunity.").

The rationale for allowing an interlocutory appeal when a court denies a motion for summary judgment grounded on immunity is that the claimed right to immunity includes the right not to proceed to trial; this right would be lost if not immediately reviewable. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

The availability of an interlocutory appeal from a denial of qualified immunity is also "limited to the purely legal question of immunity." *Rodriguez v. Maricopa Cnty. Cmty. Coll. Dist.*, 605 F.3d 703, 707 (9th Cir. 2010). " '[W]here the district court denies immunity on the basis that material facts are in dispute, we generally lack jurisdiction.' " *Id.* (quoting *Cunningham v. Gates*, 229 F.3d 1271, 1286 (9th Cir. 2000)).

In addition, the Supreme Court has stressed that, in applying the collateral order doctrine, "it must 'never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered.' " *Mohawk Indus., Inc. v. Carpenter*, 130 S. Ct. 599, 605 (2009) (quoting *Digital Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 868 (1994)). "The justification for immediate appeal must therefore be sufficiently strong to overcome the usual benefits of deferring appeal until litigation concludes." *Id.*

## B.

General Dynamics frames the district court's order as a denial of its government contractor defense, and therefore as a denial of immunity from suit, rather than as a denial of summary judgment based on a disputed issue of material fact. Framed this way, General Dynamics contends that it has established each of the elements of the government contractor defense and, therefore, the district court erred by denying it immunity. It also asserts that it has satisfied each of the three elements allowing for an interlocutory appeal under the collateral order doctrine. Because we hold that the government contractor defense is not a grant of immunity and that the district court denied summary judgment on the basis of a disputed issue of material fact, we dismiss this appeal.

**[3]** In general, the government contractor defense shields contractors from tort liability in state or federal actions where plaintiffs allege they sustained injuries as a result of exposure

to defective products or equipment manufactured or supplied under a government contract. In *Boyle*, the Supreme Court stated that the government contractor defense involved "uniquely federal interests" that could preempt and bar the plaintiffs' state law design-defect claim where the facts supported each of the three elements of the defense. 487 U.S. at 505-14. To be invoked successfully by a government contractor, the defense requires that:

> Liability for design defects in military equipment cannot be imposed, pursuant to state law, when (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

*Id.* at 512. Although *Boyle* was limited to design defects, we have held that the government contractor defense also applies to actions involving manufacturing defects. *Snell v. Bell Helicopter Textron, Inc.,*, 107 F.3d 744, 749 n.3. (9th Cir. 1997). The Court in *Boyle* noted that "whether the facts establish the conditions for the defense is a question for the jury." *Id.* at 514.

**[4]** Although the source of the government contractor defense is the United States' sovereign immunity, we have explicitly stated that "the government contractor defense does not confer sovereign immunity on contractors." *United States ex rel. Ali v. Daniel, Mann, Johnson & Mendenhall*, 355 F.3d 1140, 1147 (9th Cir. 2004) We reiterated this statement in *Del Campo*, 517 F.3d at 1078 n.10.

**[5]** Our decision in *Phillips v. E.I. DuPont deNemours & Co.* (*In re Hanford Nuclear Reservation Litigation*), 534 F.3d 986 (9th Cir), cert. denied, 129 S. Ct. 762 (2008), is in accord. There we held that, because the government contractor

defense was not well established when Congress enacted the Price-Anderson Act, it did not apply to the claims there in issue. *Id.* at 1002. We noted, in passing, that the defense "allows a contractor-defendant to *receive the benefits* of sovereign immunity *when a contractor complies* with the specifications of a federal government contract." *Id.* at 1000 (emphasis added). This wording implicitly recognizes our consistent position that the government contractor defense is not a grant of immunity but is only a corollary financial benefit flowing from *the government's* sovereign immunity.

**[6]** The government contractor defense applies only when a contractor meets its burden of establishing three facts: (1) the United States set forth "reasonably precise specifications"; (2) "the equipment conformed to those specifications"; and (3) the supplier provided the United States with adequate warnings of the dangers. *Boyle*, 487 U.S. at 512. Here, there is no proof to establish as a matter of law that the equipment conformed to the government's precise specifications. In fact, the plaintiffs' expert determined that the premature explosion was caused by a defect in the cartridge body, voiding or cracking in the high explosive filling, or a foreign body in the high explosive filling. This evidence could allow a finding of noncompliance with the government's precise specifications.

**[7]** There is evidence from which the factfinder could conclude that General Dynamics complied with the government's specifications, in which case General Dynamics will be entitled to the government contractor defense. However, contrary evidence also appears in the record and, until the requisite facts are determined, General Dynamics is not entitled to the government contractor defense.

**[8]** Once the relationship of the government contractor defense to the underlying claims is understood, it is clear that the district court's order does not qualify for an interlocutory appeal under the collateral order doctrine. The denial of the government contractor defense at the summary judgment

stage does not conclusively determine General Dynamics' liability or even determine whether it is entitled to the government contractor defense. Also, the ruling does not resolve any "important issue completely separate from the merits of the action." *Coopers & Lybrand*, 437 U.S. at 468. Questions as to the government's specifications and as to General Dynamics' conformance with those specifications go to the heart of Plaintiffs' claims for negligence and strict liability, as well as to General Dynamics' assertion of the government contractor defense. Finally, the trial court's denial of the government contractor defense will be reviewable on appeal from a final judgment. In contrast, the denial of a claim of qualified immunity is not fully correctable on appeal from a final judgment because immunity includes the right not to be required to go to trial, as well as a defense against a judgment. *See, e.g.*, *Mitchell*, 472 U.S. at 525-27; *Mueller v. Auker*, 576 F.3d 979, 987 (9th Cir. 2009).

**[9]** Even if we were to treat the government contractor defense as a claim of qualified immunity, we could not grant General Dynamics relief. "Our jurisdiction to review an interlocutory appeal of a denial of qualified immunity . . . is limited exclusively to questions of law." *Wilkinson v. Torres*, 610 F.3d 546, 550 (9th Cir. 2010). Here, the district court's denial of summary judgment rested on its finding that there is a disputed issue of material fact as to whether the cause of the explosion was double loading, a defect in the cartridge at the manufacturing stage, or some other cause. This ruling raises factual issues, rather than legal questions, and thus would not be reviewable on interlocutory appeal. *See Rodriguez*, 605 F.3d at 707.

## **III**.

**[10]** We also decline General Dynamics' request that its notice of appeal be treated as a petition for writ of mandamus to resolve the *Boyle* defense on the merits. "The writ of mandamus is an 'extraordinary' remedy limited to 'extraordinary'

causes." *Burlington N. & Santa Fe Ry. Co. v. U.S. Dist. Court (Cebull)*, 408 F.3d 1142, 1146 (9th Cir. 2005) (quoting *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004)). We treat an appeal as a writ of mandamus "only [in] exceptional circumstances amounting to a judicial 'usurpation of power,' " or where a "clear abuse of discretion[ ] will justify the invocation of this extraordinary remedy." *Cheney*, 542 U.S. at 380 (citation omitted). Although "[w]e may treat an appeal from an otherwise nonappealable order as a petition for a writ of mandamus," "[w]hether we construe the appeal as a writ of mandamus depends on whether mandamus is itself justified." *Hernandez v. Tanninen*, 604 F.3d 1095, 1099 (9th Cir. 2010) (citation omitted).

The court will issue the writ only under very limited circumstances:

> [W]e review the district court's orders, not for an abuse of discretion, but for clear error. Under this standard, we will only issue the writ for usurpation of judicial power or a clear abuse of discretion. Five "objective principles" guide the inquiry: whether (1) [the appealing party] has no other adequate means, such as direct appeal, to attain the relief, (2) he will be damaged or prejudiced in a way not correctable on appeal, (3) the district court's order is clearly erroneous as a matter of law, (4) the district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules, or (5) the district court's order raises new and important problems, or issues of law of first impression.

*Cordoza v. Pac. States Steel Corp.,* 320 F.3d 989, 998 (9th Cir. 2003) (citations omitted). Not every factor must be satisfied, and the court may deny the petition even where the factors are satisfied, because granting the writ is discretionary. *See, e.g., San Jose Mercury News, Inc. v. U.S. Dist. Court (Ware)*, 187 F.3d 1096, 1099 (9th Cir. 1999).

**[11]** Here no extraordinary circumstances justify issuance of a writ. As we have noted, the government contractor defense does not confer an immunity from suit, the district court's finding of a genuine issue of material fact is not clearly erroneous, and General Dynamics has not shown that it will be damaged in a manner not correctable on appeal. Rather, General Dynamics retains the right to raise the government contractor defense both at trial and on appeal from a final order of the district court. *See Cordoza*, 320 F.3d at 998.

## IV.

**[12]** We dismiss this appeal for lack of jurisdiction. Consistent with our prior decisions, we hold that the government contractor defense does not confer absolute or qualified immunity. Accordingly, the denial of a motion for summary judgment based on the government contractor defense is not usually appealable under the collateral order doctrine. Certainly, the district court's order in issue here, grounded on genuine issues of material fact, is not immediately appealable. General Dynamics has also failed to make the type of extraordinary showing required for us to treat its appeal as a petition for an extraordinary writ of mandamus. The appeal is

**DISMISSED.**